**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**JULIO JESUS SIMOZA RANGEL**                                 **PETITIONER**

**v.**                                    **CIVIL ACTION NO. 5:19-cv-118-DCB-MTP**

**WARDEN SHAWN R. GILLIS**                                    **RESPONDENT**

<u>**REPORT AND RECOMMENDATION**</u>

THIS MATTER is before the Court on Petitioner Julio Jesus Simoza Rangel's Petition for Writ of Habeas Corpus [1] pursuant to 28 U.S.C. § 2241 and Motion to Enforce Release [13]. Having considered the parties' submissions and the applicable law, the undersigned recommends that that Court grant the Petition [1], grant the Motion to Enforce Release [13], and order the Petitioner be deported or released from Immigration and Customs Enforcement ("ICE") custody within thirty days of a favorable ruling on the Petition [1].

**BACKGROUND**

On or about June 8, 2016, Petitioner—a citizen of Venezuela—was admitted into the United States with a nonimmigrant B-2 Visa, with authorization to remain until December 7, 2016. *See* [9-1] at 1. On January 28, 2019, Petitioner was convicted in the Circuit Court of Mobile County, Alabama for First Degree Sexual Abuse. *Id*. On April 10, 2019, Petitioner was released to ICE for removal proceedings. *Id*. On May 1, 2019, an Immigration Judge ordered Petitioner removed from the United States to Venezuela, and Petitioner waived appeal of the decision. *Id*.

On November 14, 2019, Petitioner filed his Writ of Habeas Corpus [1]. Respondent filed his Response [9] on December 19, 2019. Petitioner then filed a Motion to Enforce Release [13] on June 25, 2020. On July 28, 2020, Respondent filed his Response [18] stating that Petitioner's

removal remains imminent. *See* [18] at 3. Petitioner is still held in ICE detention at Adams County Detention Center. *See* [13] at 5.

## ANALYSIS

The controlling statute in this case, 8 U.S.C. § 1231(a)(1)(A), provides that the Attorney General has ninety days after an order of removal becomes final to deport the alien. The Supreme Court has held that detention of aliens beyond this ninety-day period is acceptable up to six months. *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). This, however, does not mean that every alien not removed after six months must be released. "After this 6-month period, once the alien provides good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing." *Id.* "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* "[D]etermining what the 'reasonably foreseeable future' really is, is a factual determination to be undertaken by the habeas court looking into the circumstance and detention length of each individual petitioner." *Kane v. Mukasey*, 2008 WL 11393137, at *4 (S.D. Tex. Aug. 21, 2008), *superseded by Kane v. Mukasey*, 2008 WL 11393094 (S.D. Tex. Sep. 12, 2008) (finding habeas petition was moot after petitioner was deported).

"The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). This burden does not require the alien to show that deportation will prove "impossible" or "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable . . . ." *Zadvydas*, 533 U.S. at 702. "In order to shift the burden to the Government, an alien must demonstrate that the circumstances of his status or the existence of the particular individual barriers to his repatriation to his country of

origin are such that there is no significant likelihood of removal in the foreseeable future." *Galtogbah v. Sessions*, 2019 WL 3766280, at *2 (W.D. La. June 18, 2019). However, "an alien's claim must be supported by more than mere speculation and conjecture." *Id*. (internal quotations and citation omitted).

Once the alien has met his initial burden, the burden shifts to the Government to "respond with evidence sufficient to rebut the alien's showing." *Zadvydas*, 533 U.S. at 701. "[F]or detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*.

Petitioner acknowledges that he has been in ICE custody since April of 2019 and his final removal order was issued on May 1, 2019. *See* [1] at 2. Therefore, the length of Petitioner's confinement is far in excess of the six-month presumptively reasonable period prescribed by the Supreme Court in *Zadvydas*. Petitioner asserts that he has "collaborated fully" with ICE's removal efforts, and Respondent makes no assertion that Petitioner has been anything but cooperative. *See* [13] at 5; *see also* [18]. Petitioner asserts that his removal is not likely in the foreseeable future because Venezuela and the United States have "stopped government relations" and no flights are allowed from the United States to Venezuela. *See* [13] at 2. Additionally, Petitioner asserts that Trinidad and Tobago, the country the Government previously used to obtain transit visas for detainees being removed to Venezuela, is no longer allowing removal through its ports. *Id*.

As explained below, the record supports Petitioner's assertions, and Petitioner has provided good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. Thus, Petitioner has met his initial burden under *Zadvydas*. *See Hassoun v.*

*Session*, 2019 WL 78984, at *4 (W.D.N.Y. Jan. 2, 2019) (finding that petitioner met his burden when he had shown that the countries with which he had an affiliation would not accept him).

The burden now shifts to the Government to rebut Petitioner's showing. The Government counters that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future. *See* [18] at 6.  The Government's argument relies upon the Declaration [9-1] by Richard A. Brooks, an Assistant Field Office Director with the U.S. Department of Homeland Security dated December 19, 2019 and a second Declaration [18-1] by Jason J. Meyen, an ICE Deportation Officer dated July 28, 2020. In the earlier declaration, Brooks states that ICE has an approved flight path to remove detainees to Venezuela. *See* [9-1] at 2. The second declaration by Meyen states that the Petitioner's commercial removal flight was cancelled due to the COVID-19 pandemic. *See* [18-1] at 2. However, Meyen states that it is his belief once Trinidad and Tobago resumes normal operations, ICE will be able to schedule Petitioner's removal. *Id*. at 2. The Government asserts that "[t]he Trinidad and Tobago Consulate is generally cooperative in issuing visas for transit through their country in route to Venezuela." *Id*. In Petitioner's Motion to Enforce Release [13], however, he explains that Venezuela's controlling government is headed by Maduro, but the United States is communicating only with Guaido, who is trying to take over the Venezuelan government. *See* [13] at 2.

Petitioner argues that the Government was "misleading the court by asserting the removal of Venezuelan people is eminent [*sic*]." *See* [13] at 2. Regardless, the record now demonstrates that Petitioner's removal is not likely in the reasonably foreseeable future. Meyen asserts that because Venezuela approved Petitioner for removal and granted him two emergency travel documents in the past, obtaining another travel document should not be difficult. *See* [18-1] at 2.

However, these travel documents did not result in the removal of Petitioner to Venezuela. *See* [13] at 5.

That ICE was previously able to remove Venezuelans through Trinidad and Tobago, and that the Trinidad and Tobago Consulate have generally been cooperative in issuing visas for transit through their country to Venezuela, does not demonstrate that Petitioner will be removed in the reasonably foreseeable future. *Id.* "[A] theoretical possibility of eventually being removed does not satisfy the government's burden once the removal period has expired and the petitioner establishes good reason to believe his removal is not significantly likely in the reasonably foreseeable future." *Kane*, 2008 WL 11393137 at *5; *see also Andreasyan v. Gonzalez*, 446 F. Supp. 2d 1186, 1189-90 (W.D. Wash. 2006) (finding that respondent had not rebutted petitioner's showing that he would not be removed when respondent repeatedly asked for "a few more weeks" to obtain travel documents). "[I]f [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur— or even that it *might* occur— in the reasonably foreseeable future." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019).

With no significant likelihood of removal in the foreseeable future, Petitioner's detention is now unreasonable. *See Ali v. Dep't of Homeland Sec.*, 2020 WL 1666074 (S.D. Tex. Apr. 2, 2020) (granting writ when petitioner could not be removed due to travel restrictions to Pakistan). After more than a year of detention, "Petitioner's removal need not necessarily be imminent, but it cannot be speculative." *Hassoun*, 2019 WL 78984, at *6.

As the Government has not met its burden to show that continued detention is authorized, Petitioner should be deported or released. "[T]he alien's release may and should be conditioned on any of the various forms of release that are appropriate in the circumstances, and the alien

5

may no doubt be returned to custody upon a violation of those conditions." *Zadvydas*, 533 U.S. at 700; *see Okwilagwe v. I.N.S.*, 2002 WL 356758 (N.D. Tex. Mar. 1, 2002) (granting writ of habeas corpus but setting conditions of alien's release).

## RECOMMENDATION

For the reasons set forth above, the undersigned recommends that:

1.  the Petition [1] be GRANTED;

2.  Petitioner's Motion to Enforce Release [13]¹ be GRANTED; and

3.  the Court order Immigration & Customs Enforcement to deport Petitioner or release him subject to appropriate conditions of supervision, to be determined by Immigration & Customs Enforcement, within thirty days of the Court's order granting the Petition [1].

## RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge, and the opposing party. The district judge at the time may accept, reject, or modify in whole or in part, the recommendations of the magistrate judge or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except on grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions

---

¹ In his Motion [13], Petitioner specifically requests that the Court grant his Petition within thirty days of the filing of his Motion [13]. As the Motion [13] was filed on June 25, 2020, the Court cannot grant this specific relief. The undersigned, however, recommends that Petitioner be granted expedited relief as set forth herein.

accepted by the district court to which the party has not objected. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 2nd day of September, 2020.

s/ Michael T. Parker
United States Magistrate Judge